FILED by MB D.C.
ELECTRONIC
Mar. 31, 2009
STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Civil Case No. _____
**09-80503-Civ-RYSKAMP/VITUNAC**

| | |
|---|---|
| JOEL B. ROTHMAN, | \| |
| Plaintiff, | \| |
| v. | \| |
| THE FLORIDA BAR and ADRIA E. QUINTELA, in her official capacity as Chief Disciplinary Counsel, Fort Lauderdale Branch, of the Legal Division of the Florida Bar, | \| |
| Defendants. | \| |

**COMPLAINT**

1.      The Florida Rules of Professional Conduct prohibit Florida lawyers from advertising testimonials of their former clients, results of their past cases, or statements regarding the quality of their services. Applying these rules, the Florida Bar prohibited plaintiff Joel B. Rothman from asking his clients to post reviews of his services on a lawyer-directory website.

2.      The Bar's prohibitions violate the First Amendment right of Rothman and other Florida lawyers to engage in truthful commercial speech. The rules also violate the First Amendment right of Florida consumers to receive information that may be critically important to their selection of a lawyer and, after the representation is complete, to communicate their opinions about the lawyer to other potential clients in the state.

3.      Rothman brings this suit under 42 U.S.C. § 1983 against the Florida Bar and Bar officials responsible for enforcing Florida's attorney advertising rules. Rothman seeks an injunction against enforcement of the rules that prohibit statements about testimonials, past successes, and quality of services, and a declaration that these rules violate the First Amendment to the U.S. Constitution.

-1-

-2-

## JURISDICTION

4.     The Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343.

## PARTIES

5.     Plaintiff Joel B. Rothman is a resident of Boca Raton, Florida, and a member of the Florida Bar. Rothman is a trial lawyer with substantial trial experience. He has been practicing law for 18 years, including the last 12 years in Florida. He is a partner in the law firm of Seiden, Alder, Matthewman & Bloch, P.A. Rothman is "AV" rated by Martindale-Hubbell and was selected for inclusion in *The Best Lawyers in America*.

6.     The challenged advertising rules injure Florida consumers, including Rothman's clients or potential clients, by preventing them from receiving truthful, non-misleading information about their legal rights and available legal services. The rules deny these consumers information that is not only completely accurate and non-misleading, but critically important to their choice of a lawyer. The rules also interfere with the First Amendment rights of consumers to communicate their opinions about their lawyers' past services.

7.     Defendant the Florida Bar is an arm of the Florida Supreme Court. It is responsible for approving lawyer advertising, issuing advisory opinions related to lawyer advertising, and investigating and prosecuting alleged violations of the rules related to lawyer advertising.

8.     Defendant Adria E. Quintela is Chief Disciplinary Counsel of the Fort Lauderdale Branch of the Legal Division of the Florida Bar. As such, she is responsible for the investigation, prosecution, and discipline of attorneys within her jurisdiction, which includes Boca Raton, Florida.

## FACTUAL ALLEGATIONS

A. The Rules Governing Lawyer Advertising in Florida

9. Members of the Florida Bar are required to comply with restrictions on the content of attorney advertising set forth in the Florida Rules of Professional Conduct. Violations of the rules are grounds for discipline, including public reprimand, suspension, and disbarment.

10. Some of the advertising rules are designed to serve the state's legitimate interest in protecting consumers from false and misleading advertising. Other rules, however, prohibit the communication of useful, non-misleading information that does not harm consumers.

   a. Rule 4-7.2(c)(1)(F) provides that a lawyer may not "make or permit to be made a . . . communication about the lawyer or the lawyer's services" if the communication "contains any reference to past successes or results obtained." A comment to the rule states:

   > The prohibition in subdivision (c)(1)(F) precludes advertisements about results obtained on behalf of a client, such as the amount of a damage award or the lawyer's record in obtaining favorable verdicts. Such information may create the unjustified expectation that similar results can be obtained for others without reference to the specific factual and legal circumstances.

   b. Rule 4-7.2(c)(1)(J) provides that a lawyer may not "make or permit to be made a . . . communication about the lawyer or the lawyer's services" if the communication "contains a testimonial." A comment to the rule states:

   > The prohibition in subdivision (c)(1)(J) precludes endorsements or testimonials, whether from clients or anyone else, because they are inherently misleading to a person untrained in the law. Potential clients are likely to infer from the testimonial that the lawyer will reach similar results in future cases. Because the lawyer cannot directly make this assertion, the lawyer is not permitted to indirectly make that assertion through the use of testimonials.

   c. Rule 4-7.2(c)(2) prohibits advertisements that "describ[e] or characteriz[e] the quality of the lawyer's services." The Florida Supreme Court has interpreted this rule to

prohibit statements about a lawyer's "character and personality traits." *Fla. Bar v. Pape*, 918 So. 2d 240, 244 (Fla. 2005).

11. The advertising rules prohibit these forms of communication even if the information conveyed is true, thus depriving Florida consumers of information that is directly relevant to their choice of legal services. The rules interfere with the ability of lawyers to engage in commercial speech that is interesting, informative, or likely to attract potential clients.

12. Florida has no evidence that the prohibited techniques are likely to mislead or otherwise harm consumers. Consumers regularly see commercials containing testimonials, statements of past success, and descriptions of quality regarding a wide range of products and services, and the Bar has no evidence that consumers are unable to evaluate the credibility and usefulness of this information without reaching the irrational conclusion that a lawyer's success in one case would necessarily lead to success in a different, unrelated case, regardless of the facts and law of that case. The state's contention that consumers would be misled by everyday advertising techniques wrongly assumes that Florida consumers are naive, irrational, and lacking in common sense.

13. Neither the American Bar Association's Model Rules of Professional Conduct nor the rules of the vast majority of other states prohibit these forms of communication. Other than Florida, only one state imposes a complete prohibition on references to past results, and only four states completely prohibit testimonials. Florida has no evidence that the rules of the majority of states have been inadequate to protect consumers or to advance any other legitimate state interests.

14. Florida also has no evidence that it could not accomplish its goals with less restrictive means, such as requiring that certain information in lawyer advertising be

accompanied by a disclosure or disclaimer. Six states allow references to past results if they are accompanied by a disclaimer stating that past successes do not guarantee future results, and seven states allow testimonials when accompanied by a similar disclaimer. Florida has no evidence that these disclaimers have been inadequate to protect consumers or to advance any other legitimate state interests.

      **B.**      **The Rules' Regulation of Web Advertising**

      15.      Rule 4-7.6 of the advertising rules governs "computer-accessed communications," including lawyer websites. The rules governing a particular website vary dramatically depending on how the website is used.

           a.      Rule 4-7.6(b) provides that websites "are considered information provided upon request" if they are "controlled or sponsored by a lawyer or law firm and . . . contain information concerning the lawyer's or law firm's services." Because websites are treated as information provided on request, Rules 4-7.1(f) and (g) provide that these websites are not subject to *any* of the rules governing lawyer advertising other than the "general rule prohibiting a lawyer from engaging in conduct involving dishonesty, deceit, or misrepresentation." Thus, websites controlled by a lawyer or law firm are allowed to include past results, testimonials, or characterizations regarding quality of services as long as the statements are not false or misleading.

           b.      If, however, a website is *not* controlled by a lawyer or law firm, Rule 4-7.6 provides that statements regarding a lawyer's services "are subject to the requirements of rule 4-7.2." Under Rule 4-7.2, lawyers are prohibited from including past results, testimonials, or statements regarding quality of services.

      16.      There is no reason to believe that consumers are less likely to be confused by websites when they are controlled by a lawyer or law firm as opposed to another person or entity.

The distinction currently in effect thus restricts speech on the Internet without serving any legitimate state interest.

### C.     The Rules Amendment Process

17.     In 2004, the Bar created a task force "charged with reviewing the attorney advertising rules and recommending changes to the rules if deemed necessary." Among other things, the task force recommended that all websites be exempted from the rules against communicating about testimonials, past successes, and quality of services.

18.     Without explaining its rationale or relying on any evidence, the Bar's Board of Governors rejected the task force's recommendation. Instead, the Bar appointed a new committee, the Special Committee on Website Advertising, to study the issue.

19.     The special committee produced a report recommending to the Board of Governors that *all* websites be subjected to the rules against communicating testimonials, past results, and quality of services—the polar opposite of the task force's recommendation. Like the task force, the committee made this decision without relying on studies, surveys, or empirical evidence of any kind.

20.     In response to the special committee's recommendation, the Federal Trade Commission's Office of Policy Planning, Bureau of Consumer Protection, and Bureau of Economics submitted comments to the Bar advising that the rules would prohibit websites that are not false or misleading and could hurt consumers by inhibiting competition, frustrating consumer choice, and ultimately increasing prices while decreasing quality of service. The FTC wrote that "[t]estimonials and information about previous representations can convey valuable information to consumers and help spur competition." The FTC also recommended that "the potential to mislead consumers should, when possible, be remedied with a disclosure or disclaimer rather than with a blanket prohibition on an advertising technique."

21. At its January 26, 2007 meeting, the Board of Governors voted against adopting the special committee's recommendation. Instead, it recommended its own "intermediate position," which, again, was not developed based on any evidence.

   a. The Board recommended that a lawyer or law firm's home page be required to comply with *all* advertising rules. This is the opposite of the current rule, which provides that a lawyer or law firm's home page is subject to *none* of the advertising restrictions other than the general rule against false and misleading ads.

   b. The Board also recommended that web pages on a lawyer or law firm's website other than the home page should be allowed to post information about past results, testimonials, and statements characterizing the quality of legal services, but only if this information is accompanied by a disclaimer.

   c. Like the current rules, the Board's proposal required that websites not controlled by a lawyer or law firm comply with all advertising rules.

22. There is no reason to believe that consumers are more likely to be misled by a lawyer's home page than they are by other pages on a lawyer's website. Nor is there any evidence that the required disclaimers, if effective on some pages of a lawyer's website, would not be equally effective on the lawyer's home page and on websites not affiliated with the lawyer.

23. On February 26, 2008, the Board petitioned the Florida Supreme Court to adopt its proposed rules regarding Internet advertising.

24. On February 27, 2009, the Florida Supreme Court rejected the Bar's proposed amendments. The Court suggested instead that the Bar formulate rules that would require consumers to supply their name, address, and phone number, and to click a button indicating

acceptance of a disclaimer, before accessing any part of a lawyer's website that includes information about past results, testimonials, and statements characterizing the quality of legal services.

25. Neither the amendments proposed by the Florida Bar nor the revisions suggested by the Florida Supreme Court would change the current prohibitions regarding websites that are not controlled by a lawyer or law firm. Therefore, regardless of the rule ultimately adopted by the Florida Supreme Court, the rules will prohibit Rothman's use of third-party sites to advertise his services.

**D.    The Avvo Lawyer-Directory Website**

26. Avvo is a publicly accessible website that provides free information about lawyers, including information about lawyers' bar admissions and disciplinary history. Lawyers who register on the site can provide additional information, such as their education, experience, publications, speaking engagements, and past cases. Based on this information, Avvo uses an algorithm to assign each lawyer a numerical rating.

27. Current or former clients of a lawyer can post reviews on a lawyer's Avvo profile. Clients submitting reviews are asked to rate their lawyer on whether the lawyer is trustworthy, responsible, knowledgeable, and diligent about keeping clients informed. Clients are also able to enter their opinions regarding the quality of the lawyer's services. The majority of submissions rate attorneys as "good" or "excellent," but about sixteen percent rate lawyers as "poor" or "fair."

28. Clients do not need their lawyers' permission to post a review on the lawyer's profile, and lawyers cannot change or delete client reviews that have been posted. Avvo's policies preclude it from changing or removing reviews at a lawyer's request.

29. Lawyers can request that particular clients submit reviews by filling out a "Client Rating Request Form." The form provides fields to enter clients' email addresses along with a short personal message. The default message, which can be modified, reads:

> I've joined Avvo, a website that helps people find and choose lawyers. Avvo gives every lawyer an online profile with space for ratings from former clients. If you feel comfortable recommending my services, I would welcome your comments for my Avvo profile. It only takes a couple of minutes, and your name is kept confidential.
>
> Thank you,
> &lt;lawyer name&gt;

30. After the lawyer completes the form, Avvo automatically sends an email to the specified email addresses, stating that the lawyer "has asked for you to provide a Client Rating on the online legal directory Avvo." The email provides a link that the recipients can click on "if [they] would like to leave a rating for [their] attorney." Avvo uses the client email addresses only to send this email and does not store the addresses after the email has been sent.

31. On April 8, 2008, the Florida Bar's Standing Committee on Advertising decided that Florida lawyers can include their numerical Avvo rating in their advertising. However, the committee warned that using Avvo could violate other rules, including the rules against client testimonials and characterization of a lawyer's services.

E. **The Rules' Application to Plaintiff Joel B. Rothman**

32. Plaintiff Joel B. Rothman maintains a biography on his firm's website (http://www.seidenlaw.com/) where he lists his areas of practice and relevant experience. In addition, he publishes several blogs, including the Nutritional and Dietary Supplement Law Blog (http://nutrisuplaw.com/). Rothman's blogs contain a short biography and information about his practice.

33. Rothman also maintains a profile on the Avvo website. Among other things, Rothman's profile includes his contact information, areas of practice, education and work history, awards, associations, publications, speaking engagements, and results of prior cases. Some of this information is prohibited by the rules against statements of past results and quality of services. Unless Rothman removes this information from his Avvo profile, he risks professional discipline by the Bar.

34. In April 2008, Rothman used Avvo's Client Rating Request Form to request reviews from several former clients. Rothman submitted the form without altering the default personal message provided by Avvo, except that he added a short sentence thanking respondents for their time. Aside from filling out this form, Rothman never communicated with these clients about the reviews they would submit, nor did he write or suggest any content for the reviews.

35. Five former clients responded to Rothman's request by submitting reviews that included information about the results in Rothman's prior cases and opinions about the quality of his services.

36. In May 2008, Rothman called the Florida Bar's ethics counsel to ask whether the use of client reviews on his Avvo profile violated the Bar's advertising rules. The ethics counsel responded that any client statements on Rothman's profile characterizing the quality of his services would be imputed to him based on his use of the site. The ethics counsel concluded that Rothman's use of the site violated Rule 4-7.2(c)(1)(F) ("A lawyer shall not make or permit to be made a . . . communication about the lawyer or the lawyer's services . . . if it . . . contains any reference to past successes or results obtained.").

37. On May 22, 2008, Rothman sent a letter to the Bar's ethics counsel requesting written confirmation of the Bar's decision. In response, the Bar informed him that the matter would be considered at the next meeting of the Bar's Standing Committee on Advertising.

38. The Standing Committee met on September 11, 2008, and voted unanimously to uphold the ethics counsel's opinion that Rothman's use of Avvo violated the lawyer advertising rules. On October 6, 2008, the ethics counsel issued an advisory opinion consistent with the Standing Committee's decision, stating that client reviews on Avvo "constitute testimonials under Rule 4-7.2(c)(1)(J) and are therefore prohibited." Although Rothman had not personally posted the reviews, the Standing Committee decided that the rule also prohibited requesting reviews from former clients, because "what is prohibited if you do it is also prohibited if done through a third party."

39. Rothman appealed the Standing Committee on Advertising's decision to the Bar's Board of Governors. On December 11, 2008, the Board's Review Committee on Professional Ethics unanimously voted to recommend that the Board affirm the Standing Committee's decision. On December 12, 2008, the Board of Governors voted to adopt the Review Committee's recommendation.

40. Rothman requested that Avvo remove the client reviews from his profile, but Avvo refused. Avvo's corporate counsel informed him that the site's policy prohibits removing reviews at a lawyer's request.

41. Because Rothman cannot remove the client testimonials from his profile, and because the Bar's rules impute those testimonials to him, Rothman is subject to a risk of discipline for his use of the Avvo service.

42. The rules also prohibit Rothman from including testimonials, information about past cases, and statements regarding the quality of his services on other online lawyer directories such as Martindale-Hubbell, Google, Yahoo, MSN Live, Yelp, and Citysearch.

## CLAIMS FOR RELIEF

43. For the foregoing reasons, the rules restrict, unduly burden, and chill the right to engage in truthful commercial speech secured by the First Amendment of the U.S. Constitution, as applied to the states through the Fourteenth Amendment to the U.S. Constitution.

44. Plaintiff respectfully requests that this Court

    a. declare unconstitutional and issue a preliminary and permanent injunction against enforcement of Rules 4-7.2(c)(1)(F), 4-7.2(c)(1)(J), and 4-7.2(c)(2) of the Florida Rules of Professional Conduct;

    b. award plaintiff his costs, including reasonable attorney's fees, pursuant to 42 U.S.C. § 1988; and

    c. grant any additional relief to which plaintiff is entitled.

Dated: March 31, 2009   Respectfully submitted,

/s/ Bruce Rogow
BRUCE S. ROGOW
Florida Bar No. 067999
CYNTHIA E. GUNTHER
Florida Bar No. 0554812
BRUCE S. ROGOW, P.A.
Broward Financial Centre, Suite 1930
500 East Broward Blvd.
Fort Lauderdale, FL 33394
Phone: (954) 767-8909
Fax: (954) 764-1530
Email: brogow@rogowlaw.com
       guntherc@rogowlaw.com

GREGORY A. BECK
DC Bar No. 494479, pro hac vice to be filed
BRIAN WOLFMAN
DC Bar No. 427491, pro hac vice to be filed
PUBLIC CITIZEN LITIGATION GROUP
1600 20th St., NW
Washington, DC 20009
Phone: (202) 588-1000
Fax: (202) 588-7795
Email: gbeck@citizen.org
       brian@citizen.org

*Attorneys for Plaintiff*

**09-80503-Civ-RYSKAMP/VITUNAC**

%JS 44 (Rev. 2/08)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as req[uired] by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of C[ourt for the purpose of initiating] the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.) **NOTICE: Attorneys MUST Indicate All Re-filed Ca**[ses Below.]

FILED by MB D.C.
ELECTRONIC
Mar. 31, 2009
STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

### I. (a) PLAINTIFFS
Joel B. Rothman

**(b)** County of Residence of First Listed Plaintiff **Palm Beach**
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Bruce S. Rogow        Ph: (954) 767-8909
Broward Financial Centre, Suite 1930
500 East Broward Blvd.
Fort Lauderdale, FL 33394

### DEFENDANTS
The Florida Bar and Adria E. Quintela

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT LAND INVOLVED.

Attorneys (If Known)

09cv80503-KLR/AEV

**(d)** Check County Where Action Arose:  ☐ MIAMI-DADE  ☐ MONROE  ☐ BROWARD  ☑ PALM BEACH  ☐ MARTIN  ☐ ST. LUCIE  ☐ INDIAN RIVER  ☐ OKEECHOBEE HIGHLANDS

### II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff
☑ 3  Federal Question (U.S. Government Not a Party)
☐ 2  U.S. Government Defendant
☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

### III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

### IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☑ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **LABOR** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | | ☐ 710 Fair Labor Standards Act | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | | ☐ 720 Labor/Mgmt. Relations | **SOCIAL SECURITY** |
| ☐ 195 Contract Product Liability | | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 861 HIA (1395ff) |
| ☐ 196 Franchise | | | | | ☐ 862 Black Lung (923) |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 864 SSID Title XVI |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 865 RSI (405(g)) |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus-Alien Detainee | | ☐ 891 Agricultural Acts |
| | ☑ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | ☐ 892 Economic Stabilization Act |
| | | | | | ☐ 893 Environmental Matters |
| | | | | | ☐ 894 Energy Allocation Act |
| | | | | | ☐ 895 Freedom of Information Act |
| | | | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| | | | | | ☐ 950 Constitutionality of State Statutes |

### V. ORIGIN (Place an "X" in One Box Only)

☑ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Re-filed- (see VI below)  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ 6 Multidistrict Litigation  ☐ 7 Appeal to District Judge from Magistrate Judgment

### VI. RELATED/RE-FILED CASE(S).
(See instructions second page):
a) Re-filed Case ☐ YES ☐ NO    b) Related Cases ☐ YES ☐ NO
JUDGE _____    DOCKET NUMBER _____

### VII. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (**Do not cite jurisdictional statutes unless diversity**):
42 U.S.C. sec. 1983 suit for declaratory and injunctive relief against enforcement of lawyer advertising rules.

LENGTH OF TRIAL via _2_ days estimated (for both sides to try entire case)

### VIII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ _____
CHECK YES only if demanded in complaint:
JURY DEMAND:  ☐ Yes  ☑ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE
SIGNATURE OF ATTORNEY OF RECORD    /s/ Bruce Rogow
DATE  3/31/09

FOR OFFICE USE ONLY
AMOUNT $350.00    RECEIPT # 545880    IFP